UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AY,<br>Plaintiff,<br>v.<br>OVERLOOK AT BLUE RAVINE LLC, et al.,<br>Defendants. | Case No. 2:26-cv-01838-TLN-CSK (PS)<br><br>ORDER<br>(ECF Nos. 2, 3, 4, 5) |

Plaintiff AY is representing their self in this action and seeks leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915.[1] (ECF No. 2.) Plaintiff has also filed several miscellaneous motions, which the Court addresses below. (ECF Nos. 3, 4.) Plaintiff's application in support of the IFP request makes the required financial showing. Accordingly, the Court grants Plaintiff's IFP request.

## I. SCREENING REQUIREMENT

Pursuant to 28 U.S.C. § 1915(e), the court must screen every in forma pauperis proceeding, and must order dismissal of the case if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*,

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

203 F.3d 1122, 1126-27 (2000) (en banc). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In reviewing a complaint under this standard, the court accepts as true the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, and construes those allegations in the light most favorable to the plaintiff. *See Neitzke*, 490 U.S. at 327; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011).

Pleadings by self-represented litigants are liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (liberal construction appropriate even post–*Iqbal*). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend unless the complaint's deficiencies could not be cured by amendment. *See Lopez*, 203 F.3d at 1130-31; *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

## II. THE FIRST AMENDED COMPLAINT

Plaintiff filed a First Amended Complaint ("FAC") on July 27, 2026. FAC (ECF No. 5). In the FAC, Plaintiff alleges they suffer from multiple disabilities, including post-traumatic stress disorder, anxiety disorder, fibromyalgia, bipolar disorder, schizophrenia, dyslexia, cognitive processing disorders, and rejection sensitive dysphoria. *Id.* ¶ 1. Plaintiff has a history of suicidal ideation and anxiety-induced physical harm. *Id.* Plaintiff

alleges their disabilities arose due to their experience litigating immigration deportation proceedings and seeking asylum in the United States. *Id.* ¶ 21. Plaintiff alleges their disabilities affect Plaintiff's ability to work and maintain housing, among other activities. *Id.* ¶ 23. Plaintiff identifies as non-binary. *Id.* ¶ 2.

Plaintiff holds a housing choice voucher for a three-bedroom apartment.[2] *Id.* ¶ 3. Plaintiff's housing choice voucher is administered by the Sacramento Housing and Redevelopment Agency ("SHRA"). *Id.* ¶ 2. Plaintiff also receives Supplemental Security Income ("SSI") disability benefits. *Id.* ¶ 4.

Plaintiff alleges that, between June and July 2024, Plaintiff applied to multiple apartment complexes in Folsom, California for a three-bedroom apartment. *Id.* ¶ 8. Plaintiff's allegations as to each application are as follows.

First, in June 2024, Plaintiff applied for an apartment from Defendant Overlook at Blue Ravine LLC ("Overlook"). *Id.* ¶ 41. Plaintiff alleges the initial security deposit quoted was $400. *Id.* Plaintiff's application was denied on July 15, 2024 due to purported "discrepancies in relation to Plaintiff's rental history." *Id.* ¶ 46. On July 18, 2024, after Plaintiff had disputed the denial, Defendant Overlook approved Plaintiff's rental application, conditioned on a $2,000 security deposit. *Id.* ¶ 50. Plaintiff alleges that the $2,000 security deposit conflicted with the $1,000 deposit on Plaintiff's "Rental Quote Sheet" and with the $400 deposit originally quoted. *Id.* According to Plaintiff, Plaintiff is

---

[2] "The Section 8 Housing Choice Voucher Program provides rental assistance to the most vulnerable members of our society. . . . The Voucher Program is funded and regulated by the federal Department of Housing and Urban Development, and it is administered at the local level through 'public housing agencies.' 24 C.F.R. § 982.1(a). [¶] The public housing agencies determine whether individuals are eligible to participate in the program. 24 C.F.R. § 982.201. When an individual is approved, the public housing agency gives that person a voucher which entitles him to search for qualifying privately-owned housing. 24 C.F.R. § 982.302. When a voucher-possessing individual finds a qualifying unit, the unit owner and public housing agency will negotiate and enter into a housing assistance payment contract, which inter alia specifies the maximum monthly rent that the unit owner may charge. 42 U.S.C. § 1437f(c). After that contract has been formed, the public housing agency will make subsidy payments to the unit owner on behalf of the tenant." *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1184 (9th Cir. 2015) (citation modified).

unable to pay a security deposit of $2,000 because SSI asset limits prohibit Plaintiff's countable resources from exceeding $2,000 in any given month. *Id.* ¶¶ 38-39. Plaintiff alleges they informed Defendant Overlook of the SSI asset limit and requested Defendant Overlook reduce the security deposit to $1,000, $400, or any deposit amount that would not risk the loss of Plaintiff's SSI benefits. *Id.* ¶ 54. Plaintiff alleges Defendant Overlook refused Plaintiff's request without further negotiation. *Id.* ¶ 55. Defendant Overlook also refused to accept SHRA's offer to subsidize $2,700 of Plaintiff's monthly rent, instead maintaining a rental rate of $2,950 per month. *Id.* ¶ 56. After attempting to resolve issues regarding a defective money order and following up with Defendant Overlook, Plaintiff was informed on July 29, 2024 that the apartment had been re-rented. *Id.* ¶¶ 58-62. Plaintiff alleges that the apartment Plaintiff sought to rent was not rented as of August 22, 2024. *Id.* ¶ 63. Plaintiff alleges that as of April and May 2026, Defendant Overlook has offered three-bedroom units for rent at $2,650 per month with a $500 security deposit and six weeks' free rent on a twelve-month lease. *Id.* ¶¶ 63-67. Plaintiff alleges Defendant Overlook's "current offers and referral practices support an inference that [Defendant's] refusal to accept SHRA's $2,700 offer was pretextual." *Id.* ¶ 75.

Second, in May through July 2024, Plaintiff applied to rent an apartment at the Bidwell Pointe apartment complex from Defendant St. Anton Partners, LLC ("Bidwell").[3] *Id.* ¶ 76. Plaintiff alleges that the security deposit in Plaintiff's initial application and on Defendant Bidwell's website was quoted at $750 but was raised repeatedly when Defendant Bidwell re-listed the rental advertisement several times. *Id.* ¶¶ 77-78. Plaintiff also alleges that Plaintiff requested to see the desired unit to "measure dimensions for furniture" based on Plaintiff's mobility limitations, but that Defendant Bidwell refused to show Plaintiff the unit. *Id.* ¶ 77. Plaintiff alleges Defendant Bidwell processed Plaintiff's application and granted Plaintiff pre-approval but then denied Plaintiff's application and

---

[3] Although the FAC is not clear, the Court assumes for purposes of this order that Plaintiff's subsequent references to "BIDWELL POINTE" refer to Defendant St. Anton Partners, LLC. *See, e.g.*, FAC ¶¶ 76-85.

threatened to retain Plaintiff's $760 holding deposit. *Id.* ¶¶ 82-85.

Third, on July 15, 2024, Plaintiff applied to rent an apartment from Defendant Sherwood at Iron Point ("Sherwood").[4] *Id.* ¶ 86. Plaintiff alleges that the initial security deposit was quoted at $500 but that when Plaintiff's application was conditionally approved, the security deposit was raised to one month's rent, which was $2,858. *Id.* ¶¶ 87, 89. Plaintiff alleges they requested Defendant Sherwood run a credit report on Plaintiff to consider decreasing the security deposit. *Id.* ¶ 90. Plaintiff's allegations indicate Defendant Sherwood ultimately declined to rent to Plaintiff but retained Plaintiff's $63.52 application fee and $3 of Plaintiff's holding deposit. *See id.* ¶¶ 93-94.

Fourth, in June 2024, Plaintiff applied to rent an apartment from Defendant Verdell Pointe ("Verdell").[5] *Id.* ¶ 95. Plaintiff requested that Defendant Verdell submit a Request for Tenancy Approval to SHRA so that Plaintiff could rent the apartment with assistance through the housing choice voucher program. *Id.* ¶ 100. Plaintiff alleges they "explained that their disability-related urgency and pending voucher expiration deadline required expedited processing." *Id.* Plaintiff alleges that Defendant Verdell stopped responding to Plaintiff after July 29, 2024. *Id.* ¶ 102.

Fifth, around July 2024, Plaintiff applied to rent an apartment from Defendant Canyon Terrace Folsom, LLC ("Canyon Terrace"). *See id.* ¶¶ 105, 108. Plaintiff alleges that Plaintiff presented their housing choice voucher but that Defendant Canyon Terrace denied Plaintiff's application because, according to Defendant, Plaintiff's three-bedroom housing choice voucher could not be used for a two-bedroom unit. *Id.* ¶¶ 106, 107. Plaintiff alleges Defendant Canyon Terrace denied Plaintiff's application and refused to refund Plaintiff's $50 application fee and $100 holding deposit. *Id.* ¶¶ 109-110.

Finally, in July 2024, Plaintiff applied to rent a townhome from Defendant Pique Apartments, LLC ("Pique"). *Id.* ¶ 112. Plaintiff alleges Defendant Pique refused to provide rent comparables to SHRA so that SHRA could approve the Request for

---

[4] The FAC identifies the apartment complex itself as a "Defendant." FAC ¶ 31.
[5] The FAC identifies the apartment complex itself as a "Defendant." FAC ¶ 32.

Tenancy Approval. *Id.* ¶ 114. As a result, SHRA did not approve subsidizing Plaintiff's prospective rent to Defendant Pique under the housing choice voucher program. *Id.* Plaintiff alleges Defendant Pique "did not bother to accommodate Plaintiff because they did not want to deal with the voucher, while they had other renters paying with cash." *Id.* ¶ 115. Plaintiff alleges that Defendant FPI Management Inc., which manages the Sherwood, Verdell, and Pique apartments, engaged in conduct that "demonstrates a deliberate corporate pattern and practice of discrimination against [housing choice voucher] [ ] holders." *Id.* ¶ 119.

Plaintiff alleges that Defendants' conduct affected Plaintiff's mental health, resulting in multiple hospitalizations in June and July 2024. *Id.* ¶¶ 120-125. Plaintiff alleges they intend to apply for available three-bedroom units at Defendants' properties if they "cease their discriminatory practices" because "Defendants' properties are among the few in Sacramento County with three-bedroom units that accept Housing Choice Vouchers." *Id.* ¶ 131. Plaintiff seeks relief pursuant to the Federal Fair Housing Act ("FHA") and California Government Code section 12955. *Id.* ¶¶ 133-161.

## III. DISCUSSION

### A. Federal Rule of Civil Procedure 8

The FAC does not contain a short and plain statement of a claim as required by Federal Rule of Civil Procedure 8. In order to give fair notice of the claims and the grounds on which they rest, a plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996).

The FAC fails to satisfy Rule 8 for two main reasons. First, it is unclear who Plaintiff is suing where the FAC appears to treat as interchangeable the names of apartment complexes, the entities that own the property, and the entities managing the property. For example, the FAC identifies three entities related to Defendant Overlook: (1) "Defendant OVERLOOK AT BLUE RAVINE LLC," which "owns, operates, and manages [(2)] the OVERLOOK AT BLUE RAVINE apartment complex," and

(3) "Defendant REALTY CENTER MANAGEMENT INC.," which "is the property management company that operates the OVERLOOK AT BLUE RAVINE property." FAC ¶¶ 24-25. But in later allegations regarding Overlook, the FAC refers alternately to "OVERLOOK," "Defendants," and "Defendant." *See, e.g.*, FAC ¶¶ 42, 47, 66. Similarly, while the FAC alleges that Defendant FPI Management, Inc. manages the Sherwood, Verdell, and Pique apartments, *see id.* ¶ 30, the FAC also identifies the Sherwood, Verdell, and Pique apartment complexes themselves as "Defendant[s]," *id.* ¶¶ 31, 32, 33, as well as the Pique apartments' property owner, Pique Apartments, LLC, *id.* ¶¶ 33, 35, but it does not appear to distinguish between these entities in later allegations regarding each apartment complex. Further, the FAC identifies both Defendants Asset Living Corporation and Asset Living, LLC as Defendant FPI Management, Inc.'s successors in interest, but it is unclear how the two entities are affiliated and can both serve as successors in interest. *Id.* ¶¶ 36, 37. Thus, because it is unclear throughout the FAC which Defendants are sued on which claims, the FAC fails to satisfy Rule 8's pleading requirements. See *McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

Second, a review of Plaintiff's FAC reveals it consists of "[t]hreadbare recitals of the elements" of their causes of action and fails to state a claim for relief. *Iqbal*, 556 U.S. at 678. Turning to Plaintiff's federal claims under the FHA, the Court addresses each claim's deficiencies below.

1. The Fair Housing Act

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1). It is also unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(2). The FHA defines a handicap as:

"(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

"There are three theories under which a plaintiff can establish a FHA discrimination claim: (1) disparate treatment, (2) disparate impact, and (3) failure to make reasonable accommodations." *Ruiz v. Grp. Iv Pomona Props., LTD*, 2026 WL 2111875, at *2 (C.D. Cal. June 23, 2026) (citing *Gamble v. City of Escondido*, 104 F.3d 300, 305-07 (9th Cir. 1997)).

Plaintiff's FAC asserts three causes of action for disability discrimination in violation of the FHA: (1) failure to reasonably accommodate (42 U.S.C. § 3604(f)(3)(B)), against Defendants Overlook, Bidwell, Sherwood, Verdell, and Pique;[6] (2) disparate treatment (42 U.S.C. § 3604(f)(2)), against Defendants Overlook, Sherwood, and Pique; and (3) disability discrimination based on refusal to rent (42 U.S.C. § 3604(f)(1)), against Defendants Bidwell and Canyon Terrace. FAC ¶¶ 133-152. Plaintiff's third cause of action for disability discrimination is construed as another cause of action based on a disparate treatment theory and will be addressed together with Plaintiff's second cause of action below. *See Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 661 (9th Cir. 2025) ("Disparate treatment is synonymous with intentional discrimination.").

2. <u>Failure to Reasonably Accommodate</u>

Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "Thus, the [FHA] imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons, not only with regard to the physical accommodations, but also with regard to the administrative policies

---

[6] For sake of simplicity due to the confusing identification of defendants in the FAC, the Court omits reference to Defendants Realty Center Management, Inc., FPI Management, Inc., Asset Living Corporation, or Asset Living LLC.

governing rentals." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146-47 (9th Cir. 2003) (citation modified).

"To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

"To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice. Put another way, without a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation." *Giebeler*, 343 F.3d at 1155 (citation modified). "Ordinarily, an accommodation is reasonable under the [FHA] when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Id.* at 1157 (citation modified).

The Court proceeds to address Plaintiff's reasonable accommodation claim with respect to each defendant identified above relating to Plaintiff's first cause of action.

*a. Defendant Overlook*

The FAC fails to state a claim that Defendant Overlook failed to provide a reasonable accommodation when it declined to reduce Plaintiff's prospective security deposit. *See* FAC ¶ 135a. As to the second element, although Plaintiff alleges they informed Defendant Overlook of Plaintiff's SSI asset limit, Plaintiff fails to allege that they disclosed to Defendant Overlook that they have a handicap as defined by the FHA. *See Whiting v. City of Palm Desert*, 2018 WL 6016991, at *6 (C.D. Cal. Mar. 5, 2018) (holding plaintiff failed to plead second element of reasonable accommodation claim

where "Plaintiff merely states that he disclosed he received Veterans disability benefits but not that he had a handicap"). As to the third element, Plaintiff fails to plausibly allege that the requested accommodation—reducing the security deposit to $1,000 or less—was necessary to afford Plaintiff an "equal opportunity" to use and enjoy the dwelling. "To show that she was denied an 'equal opportunity,' Plaintiff must demonstrate that [Defendants'] refusal to change the policy at issue denied her an opportunity for which she would otherwise be qualified." *Ling v. City of Los Angeles*, 2012 WL 12844757, at *5 (C.D. Cal. Nov. 14, 2012) (citation modified). Here, Plaintiff alleges that Defendant Overlook offered to rent at a rate of $2,950 per month, which Plaintiff indicates they could not have met through SHRA's housing voucher program. FAC ¶ 56. Thus, Plaintiff fails to allege that, but for Plaintiff's disability-based need for a decreased security deposit, Plaintiff would "otherwise be qualified" to rent one of Defendant Overlook's three-bedroom units. *See Ling*, 2012 WL 12844757, at *5; *Giebeler*, 343 F.3d at 1156 (holding accommodation to allow plaintiff's relative to co-sign apartment was necessary to afford equal opportunity where plaintiff "would otherwise be qualified" with co-signer to rent the apartment). Accordingly, Plaintiff's reasonable accommodation claim against Defendant Overlook is dismissed with leave to amend.

*b. Defendant Bidwell*

The FAC fails to plausibly allege a claim for failure to reasonably accommodate based on the allegation that Defendant Bidwell refused to show Plaintiff the unit that Plaintiff sought to rent. *See* FAC ¶ 135b. Plaintiff alleges they requested to see the unit "to measure dimensions for furniture" and that their request "was disability-related because Plaintiff has mobility limitations and needs to ensure that furniture will fit and that the unit is accessible." *Id.* ¶ 77. However, Plaintiff's allegations lack sufficient detail to explain the nature of Plaintiff's relevant handicap, Defendant Bidwell's knowledge of Plaintiff's handicap and understanding of the request, the necessity of the request to afford Plaintiff an equal opportunity to rent a unit from Defendant, and the reasonableness of the request. *See Dubois*, 453 F.3d at 1179; *Doria v. Yavapai Coll.*

*Dist. Governing Bd.*, 2025 WL 5312249, at *2 (D. Ariz. Mar. 14, 2025) (dismissing FHA claim based on conclusory allegations). Accordingly, Plaintiff's reasonable accommodation claim against Defendant Bidwell is dismissed with leave to amend.

*c. Defendant Sherwood*

The FAC fails to state a reasonable accommodation claim against Defendant Sherwood when it allegedly declined to reduce Plaintiff's prospective security deposit. *See* FAC ¶ 135c. Plaintiff alleges that although Plaintiff was quoted a security deposit of $500, Defendant Sherwood approved Plaintiff's rental application conditioned on a deposit equal to one month's rent, or $2,858. *Id.* ¶¶ 87, 89. Again, Plaintiff fails to allege sufficient facts supporting the elements of a claim for failure to reasonably accommodate, including that Defendant Sherwood knew or reasonably should be expected to know of Plaintiff's relevant handicap, that Plaintiff requested an accommodation of Plaintiff's handicap in the form of a reduced security deposit, that such an accommodation was necessary to afford an equal opportunity to rent, and that such an accommodation was reasonable. *See Dubois*, 453 F.3d at 1179; *Doria*, 2025 WL 5312249, at *2. Accordingly, Plaintiff's reasonable accommodation claim against Defendant Sherwood is dismissed with leave to amend.

*d. Defendant Verdell*

As to Defendant Verdell, the FAC again fails to state a claim for failure to reasonably accommodate based on Defendant Verdell's alleged failure to submit a Request for Tenancy Approval with SHRA. *See* FAC ¶ 135d. Plaintiff alleges that they "requested that VERDELL POINTE submit the Request for Tenancy Approval to SHRA as a reasonable accommodation. . . . due to their disabilities and the risk of homelessness." *Id.* ¶ 100. Plaintiff alleges Defendant Verdell ceased responding to Plaintiff's emails, which "effectively denied Plaintiff's requested accommodation." *Id.* ¶ 102. Plaintiff's allegations are conclusory as to the second, third, and fourth elements of a reasonable accommodation claim under the FHA. *See Dubois*, 453 F.3d at 1179; *Doria*, 2025 WL 5312249, at *2. Accordingly, Plaintiff's reasonable accommodation claim

against Defendant Verdell is dismissed with leave to amend.

*e. Defendant Pique*

As to Defendant Pique, the FAC again fails to state a claim for failure to reasonably accommodate where Plaintiff alleges Defendant Pique failed to complete the approval process with SHRA to subsidize Plaintiff's rent. *See* FAC ¶ 135e. Plaintiff alleges Defendants "did not accommodate Plaintiff's request to justify their rent to fit SHRA standards . . . . because they did not want to deal with the voucher, while they had other renters paying with cash." *Id.* ¶ 115. Again, Plaintiff's allegations are conclusory as to the second, third, and fourth elements of a reasonable accommodation claim under the FHA. *See Dubois*, 453 F.3d at 1179; *Doria*, 2025 WL 5312249, at *2. Accordingly, Plaintiff's reasonable accommodation claim against Defendant Pique is dismissed with leave to amend.

3. Disparate Treatment

To prevail on a disparate treatment claim under the FHA, a "plaintiff must establish that the defendant had a discriminatory *intent or motive*." *Ohio House*, 135 F.4th at 661 (quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015)) (emphasis in original). "To establish a prima face case of disparate treatment under the FHA, a plaintiff must show (1) she is a member of a protected class who applied for and was qualified for housing, (2) the housing authority rejected her application based on their protected characteristic, and (3) that housing opportunities remained thereafter." *Trotter v. Sacramento Hous. & Redevelopment Agency*, 2022 WL 4538168, at *3 (E.D. Cal. Sept. 28, 2022) (citing *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1053 (9th Cir. 2007)); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). The plaintiff must allege that "[t]he rejection occurred in circumstances giving rise to an inference of discrimination on the basis of the handicap of the person residing or intending to reside with the plaintiff." *Vickerman v. Ramon Mobile Home Park Inc.*, 2015 WL 13918532, at *6 (C.D. Cal. Aug. 14, 2015) (citation modified).

Here, Plaintiff fails to plausibly state a claim for disparate treatment under the FHA because the FAC lacks non-conclusory allegations that allow the Court to reasonably infer that Defendants' refusals to lower their security deposits (Defendants Overlook, Sherwood, Pique) or to rent to Plaintiff (Defendants Bidwell, Canyon Terrace) were due to improper discrimination.

As to Defendant Overlook, the FAC alleges Plaintiff was precluded from renting an apartment because Defendant Overlook required a $2,000 security deposit and required rent at $2,950 per month, which was above what Plaintiff could pay with SHRA's housing voucher assistance. FAC ¶¶ 50, 55, 56. The FAC asserts that a reasonable inference of discrimination exists because Defendant Overlook later advertised 3-bedroom units for rent at $2,650 per month and for a $500 security deposit, with six weeks' free rent on a twelve-month lease. *Id.* ¶¶ 64-67, 73, 75. However, the FAC alleges these advertisements were made in April and May 2026, *see id.* ¶¶ 66-67, and therefore the Court cannot reasonably infer that Defendant Overlook treated differently applicants that were similarly situated as Plaintiff in 2024. Further, to the extent the FAC alleges that Defendant Overlook's disparate treatment was based on Plaintiff's use of a housing choice voucher, that is, Plaintiff's economic ability to pay for rent, courts have observed that "economic class is not a basis for a discrimination claim within the meaning of the FHA." *Trotter*, 2022 WL 4538168, at *3; *see also Volis v. Hous. Auth. of City of L.A. Emps.*, 2014 WL 12675082, at *4 (C.D. Cal. Jan. 16, 2014) ("Because Volis attributes defendants' alleged discrimination to his income rather than to his disability, he once more fails to state a discrimination claim under [the ADA or Rehabilitation Act]."), *aff'd*, 670 F. App'x 543 (9th Cir. 2016); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1161 (9th Cir. 2011) (vacating preliminary injunction requiring defendants to contract with local housing authority, citing Second Circuit case noting a "congressional intent that the burdens of Section 8 participation are substantial enough that participation should not be forced on landlords").

Likewise, the FAC's allegations against Defendants Sherwood, Pique, Bidwell, and Canyon Terrace fail to state a disparate treatment claim where Plaintiff generally alleges they unsuccessfully applied to rent from Defendants' properties using a housing choice voucher, lacking allegations that establish a reasonable inference of discrimination based on Plaintiff's handicap. *See* FAC ¶¶ 76-85, 86-94, 105-111, 112-119; *see also Mei Ling v. City of Los Angeles*, 2012 WL 12918729, at *5 (C.D. Cal. Apr. 10, 2012) (dismissing FHA discrimination claims where plaintiff's allegations are "too attenuated to raise a right to relief above the speculative level") (citation modified).

Accordingly, Plaintiff's claims for "disability discrimination — disparate treatment" and "disability discrimination — refusal to rent" (Claims Two and Three) are dismissed with leave to amend.

**B. State Law Claim**

Plaintiff also seeks to bring a claim against all Defendants under California Government Code section 12955 for housing discrimination based on source of income. FAC ¶¶ 153-161. As discussed above, Plaintiff has failed to state a claim under federal law. Accordingly, the Court will not exercise supplemental jurisdiction under Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3); *Campos v. Fresno Deputy Sheriff's Assoc.*, 535 F. Supp. 3d 913, 931 (E.D. Cal. 2021); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992). Plaintiff may amend their state law claim, but if Plaintiff fails to allege a viable federal claim in Plaintiff's amended complaint, the Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c).

**C. Leave to Amend**

Although the Federal Rules adopt a flexible pleading policy, even a pro se litigant's complaint must give fair notice and state the elements of a claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). In light of Plaintiff's pro se status, and because it is at least conceivable that Plaintiff could allege additional facts to state claims under the FHA, the Court finds it appropriate to

grant Plaintiff an opportunity to amend the FAC. *See Lopez*, 203 F.3d at 1130-31 (indicating that prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure – if it appears at all possible the defects can be corrected).

If Plaintiff elects to file an amended complaint, this new pleading shall allege facts establishing the existence of federal jurisdiction and must contain a short and plain statement of Plaintiff's claims. The amended complaint should be titled “Second Amended Complaint.” The allegations of the complaint must be set forth in sequentially numbered paragraphs, with each paragraph number being one greater than the one before, each paragraph having its own number, and no paragraph number being repeated anywhere in the complaint. Each paragraph should be limited “to a single set of circumstances” where possible. *See* Fed. R. Civ. P. 10(b). Forms are available to help plaintiffs organize their complaint in the proper way. They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

The amended complaint must not require the Court and the defendants to guess at what is being alleged against whom. *See McHenry*, 84 F.3d at 1177 (affirming dismissal of a complaint where the district court was “literally guessing as to what facts support the legal claims being asserted against certain defendants”). The amended complaint must not require the Court to spend its time “preparing the ‘short and plain statement’ which Rule 8 obligated plaintiffs to submit.” *Id*. at 1180. The amended complaint must not require the Court and defendants to prepare lengthy outlines “to determine who is being sued for what.” *Id*. at 1179.

Plaintiff is informed that the court cannot refer to a prior complaint or other filing in order to make the amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes prior complaint(s), and once the amended complaint is filed and served, any previous complaint no longer serves any

function in the case. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012).

**D. Plaintiff's Miscellaneous Motions**

The Court next addresses Plaintiff's miscellaneous motions (ECF Nos. 3, 4.)

1. Motion to Proceed Under a Pseudonym

First, Plaintiff filed a motion to proceed under the pseudonym "AY." (ECF No. 3.) Plaintiff seeks to proceed under a pseudonym because Plaintiff argues they have received death threats based on their Jewish identity, non-binary identity, disabilities, and past asylum status, and because public disclosure of Plaintiff's name would exacerbate Plaintiff's disabilities. (*See generally id*.)

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). However, the court may "conceal[ ] parties' identities in order to protect them from retaliation by third parties and also to protect nonparties from reprisals." *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000). When a party opposes a party proceeding under a pseudonym, a district court must balance five factors: "'(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears,… (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Doe*, 596 F.3d at 1042 (citing *Does I thru XXIII*, 214 F.3d at 1068). The Ninth Circuit has identified three situations where courts have permitted plaintiffs to use pseudonyms: "(1) when identification creates a risk of retaliatory physical or mental harm, (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature, and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution." *Does I thru XXIII*, 214 F.3d at 1068 (citation modified).

The Court finds that Plaintiff has sufficiently made a showing, at least at this stage in the proceedings, of the need for Plaintiff to proceed under a pseudonym. In light of Plaintiff's fear of retaliatory harm due to their identity and past asylum status, Plaintiff has sufficiently shown that their circumstances establish a privacy interest in maintaining

anonymity. Accordingly, the Court GRANTS Plaintiff's motion to proceed under a pseudonym. Plaintiff is permitted to proceed under a pseudonym through pre-trial proceedings. If this case proceeds to trial, the parties shall raise the pseudonym issue with the Court to address how to proceed.

2. Motion to File Plaintiff's Address Under Seal

Second, Plaintiff moves to file their residential address under seal. (ECF No. 3.) Plaintiff seeks to file their address under seal for the same reasons Plaintiff seeks to proceed under a pseudonym. (*See generally id*.) Plaintiff's publicly disclosed address in this matter is General Delivery, Folsom, California 95630.

Courts recognize "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978). Courts in the Ninth Circuit "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "The court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (citation modified). However, where the material is "tangentially related" to the merits of the case, a party need only satisfy the less exacting "good cause" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citation modified); *see also McCully v. Hous. Auth. of Cnty. of San Diego*, 2025 WL 3687912, at *3 (S.D. Cal. Dec. 19, 2025).

Here, the Court finds good cause to seal Plaintiff's address for the reasons stated by Plaintiff. (*See* ECF No. 3.) Thus, Plaintiff's motion to file their address under seal is GRANTED.

3. Motion for Accommodations

Next, Plaintiff filed a motion for various accommodations pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. (ECF No. 4.) Plaintiff seeks (1) e-filing privileges due to Plaintiff's inability to afford printing or mailing

documents; (2) electronic service of documents; (3) an order directing Defendants to serve all documents on Plaintiff by email; and (4) an order that this case proceed only on the papers submitted to the Court because Plaintiff cannot appear in person, by telephone, or by video. (ECF No. 4 at 3-4.)

Plaintiff's first request is DENIED with respect to utilizing the CM/ECF system to file documents. The Court declines to exercise its discretion to grant Plaintiff permission to e-file where Plaintiff has not indicated difficulties with filing paper documents in this case thus far, and Plaintiff's FAC demonstrates Plaintiff has the financial resources necessary to file paper documents. *See* FAC ¶ 39. Plaintiff will continue to file paper documents with the Court through conventional means.

Plaintiff's second request is GRANTED. The Clerk is directed to configure Plaintiff's account so that plaintiff will receive immediate email notifications when documents are filed in the case. Plaintiff consents to receive service of documents electronically and waives the right to receive service by first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(D). Plaintiff's third request is DENIED as unnecessary where no Defendants have yet appeared and Plaintiff has consented to receive electronic service of any documents filed with the Court's CM/ECF system.

As to Plaintiff's fourth request, the Court notes that there are no hearings currently scheduled before the Court in this matter. Accordingly, Plaintiff's fourth request is DENIED as moot. Plaintiff may renew this request as to a specific hearing should one be set in this matter.

## IV. CONCLUSION

In accordance with the above, IT IS ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is GRANTED;
2. Plaintiff's motion to proceed under a pseudonym (ECF No. 3) is GRANTED;
3. Plaintiff's motion to file Plaintiff's residential address under seal (ECF No. 3) is GRANTED;

a. Plaintiff is directed to email a document titled, "Notice of Plaintiff's Address" containing Plaintiff's residential address for filing under seal to approvedsealed@caed.uscourts.gov;

4. Plaintiff's request for accommodations (ECF No. 4) is GRANTED IN PART and DENIED IN PART as set forth above;

5. The Clerk is directed to configure Plaintiff's account so that plaintiff will receive immediate email notifications when documents are filed in the case (folsomer@gmail.com, provided in ECF No. 4 at 8);

6. Plaintiff's FAC (ECF No. 5) is DISMISSED with leave to amend; and

7. Plaintiff shall have 60 days from the date of this order to file an amended complaint that complies with the instructions provided above. If Plaintiff fails to timely comply with this order, the undersigned may recommend that this action be dismissed.

Dated: November 10, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, ay.1838.26